UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROYAL ALLIANCE ASSOCIATES, INC.,

Plaintiff,

v.

HENRY T. MORA, et al.,

Respondents.

Case No.  3:15-cv-03706-JST

**ORDER DENYING PETITIONER'S MOTION TO VACATE ARBITRATION AWARD AND GRANTING RESPONDENTS' MOTION TO CONFIRM ARBITRATION AWARD AND AWARD OF ATTORNEYS' FEES**

Re: ECF Nos. 19, 23, 30

Petitioner Royal Alliance Associates, Inc. ("Royal Alliance") moves to vacate an arbitration award on the ground that the arbitration panel exceeded its authority under 9 U.S.C. § 10(a)(4).  ECF No. 19.  Respondents oppose the motion and have filed a cross-motion to confirm the arbitration award.  ECF No. 23.  For the reasons stated below, Royal Alliance's motion to vacate is denied, and Respondents' motion to confirm is granted.

Respondents have also moved for attorneys' fees.  ECF No. 30.  For the reasons stated below, this motion is granted.

## I.    BACKGROUND

This case concerns two joined disputes between Royal Alliance, a brokerage firm, and its former clients Michele R. Lewis ("Lewis"), Henry T. Mora ("Mora"), and Lionel Gonzalez ("Gonzalez" collectively with Lewis and Mora "Respondents"), for breach of fiduciary duty and negligent supervision.  Pursuant to Royal Alliance's customer agreements, the disputes were required to be submitted to arbitration before a FINRA (The Financial Industry Regulatory Authority) panel.  ECF No. 25 at 6.  Royal Alliance alleges that Lewis filed the first claim against Royal Alliance on July 3, 2013.  ECF No. 1 at ¶ 6.  Two weeks later, Mora and Gonzalez filed the second claim on July 18, 2013.  Id. at ¶ 8.  In their claims, Respondents, *inter alia*, alleged:  (1)

United States District Court
Northern District of California

1   Royal Alliance's registered representatives recommended unsuitable securities investments for

2   Respondents, and (2) Royal Alliance breached its contracts with Respondents ("Customer

3   Agreements") by failing to properly supervise its representatives.  Id. at ¶ 6, 8.  Respondents

4   sought attorneys' fees in both claims.  Id.

5        On September 5, 2014, Respondents filed a motion before the Mora/Gonzalez panel,

6   requesting to join the Lewis Arbitration to the Mora/Gonzalez Arbitration.  ECF No. 1 at ¶ 11.

7   Royal Alliance opposed the motion.  Id. at ¶ 12.  On October 21, 2014, the Mora/Gonzalez panel

8   granted Respondents' motion, and consolidated both arbitrations before the Mora/Gonzalez panel.

9   Id. at ¶ 14.

10       Royal Alliance then filed a Motion to Vacate the Order of Consolidation before the

11  Director of FINRA Dispute Resolution (the "Director").  Id. at ¶ 16.  Royal Alliance asserted that

12  the cases should have been consolidated in front of the Lewis panel because Lewis was the

13  "lower-numbered" case and that Respondent's Motion to Join was "blatant 'forum shopping.'"  Id.

14       After Royal Alliance filed its motion but before the Director ruled on it, FINRA issued a

15  document called "The Neutral Corner," which provided a "'refresher' on FINRA Rule 12312"—

16  the FINRA rule governing joinder of claims.  Id. at ¶ 17.  In addition to addressing FINRA rules

17  on multiple claimants and multiple respondents, the refresher contained the following:  "If a party

18  files a motion to consolidate or sever, the panel in the lower-numbered case will decide the

19  motion, unless the parties agree otherwise."  Id.

20       On December 24, 2014, the Director denied Royal Alliance's motion because "at the time

21  of the original consolidation motion, [Royal Alliance] never requested that FINRA assign the

22  motion to the lower-numbered panel."  Id. at ¶ 18.  In response, Royal Alliance sent a letter to the

23  Director requesting that the Director reconsider its motion, which was also denied by the Director.

24  Id. at ¶ 19-20.

25       Royal Alliance filed another motion for reconsideration of joinder, but this time with the

26  Mora/Gonzalez panel.  Id. at ¶ 22.  The Mora/Gonzalez panel also denied Royal Alliance's

27  motion, finding among other things that the "Neutral Corner" release was "issued after the panel's

28  Order and that '[n]othing in the guidance indicated that it was to apply retroactively.'"  Id. at ¶ 23.

2

On July 15, 2015, the <u>Mora/Gonzalez</u> panel awarded Respondents compensatory damages of $1,085,456, punitive damages of $75,000, attorneys' fees of $184,000, and costs of $57,231.05. <u>Id.</u> at ¶ 26.

Royal Alliance filed their petition in this Court on August 13, 2015.  ECF No. 1.  They challenge the decision to consolidate the <u>Lewis</u> arbitration before the higher-numbered <u>Mora/Gonzalez</u> panel rather than the lower-number <u>Lewis</u> panel, and also challenge the award of attorneys' fees.  <u>Id.</u> at ¶¶ 28-29.  Accordingly, they request that the Court vacate the award to Lewis but not to Mora and Gonzalez, as well as vacate all awarded attorneys' fees.  <u>Id.</u> at 9-10.

## II.    LEGAL STANDARD

A court's review of an arbitration award under the Federal Arbitration Act ("FAA") is "both limited and highly deferential."  <u>Coutee v. Barington Capital Group, L.P.</u>, 336 F.3d 1128, 1132 (9th Cir. 2003) (citations and internal quotation marks omitted).  The party seeking to vacate the award has the burden of proving that vacatur is appropriate under § 10(a)(4).  <u>U.S. Life Ins. v. Superior Nat'l Ins. Co.</u>, 591 F.3d 1167, 1173 (9th Cir. 2010).

A court may vacate an arbitration award only "if that award is completely irrational, exhibits a manifest disregard of the law," or otherwise violates the Federal Arbitration Act ("FAA)".  <u>Id.</u> at 1133.  The FAA allows for vacatur of an arbitration award under only four circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C § 10(a).

"This is a high standard for vacatur; [i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error."  <u>Lagstein v. Certain Underwriters at Lloyd's, London</u>, 607 F.3d 634, 641 (9th Cir. 2010) (citations and internal quotation marks omitted).

1    Indeed, "[n]either erroneous legal conclusion nor substantiated factual findings justify federal

2    court review of an arbitral award under the statute, which is unambiguous in this regard." <u>Bosack</u>

3    <u>v. Soward</u>, 586 F.3d 1096, 1102 (9th Cir. 2009) (citations and internal quotation marks omitted).

4        "Manifest disregard of the law" means "something more than just an error in the law or a

5    failure on the part of the arbitrators to understand or apply the law." <u>Mich. Mut. Ins. Co. v.</u>

6    <u>Unigard Sec. Ins. Co.</u>, 44 F.3d 826, 832 (9th Cir. 1995) (citations omitted).  To vacate an

7    arbitration award on this ground, "[i]t must be clear from the record that the arbitrators recognized

8    the applicable law and then ignored it." <u>Id.</u>  Thus, "to demonstrated manifest disregard, the

9    moving party must show that the arbitrator 'underst[oo]d and correctly state[d] the law, but

10   proceed[ed] to disregard the same." <u>Collins v. D.R. Horton, Inc.</u>, 505 F.3d 874, 879 (9th Cir.

11   2007) (quoting <u>San Martine Compania De Navegacion</u>, 293 F.2d 796, 801 (9th Cir. 1961)).

12       "An award is completely irrational only where the arbitration decision fails to draw its

13   essence from the agreement." <u>Lagstein</u>, 607 F.3d at 642 (citation and internal quotation marks

14   omitted).  This standard is "extremely narrow." <u>Bosack</u>, 586 F.3d at 1106 (citations omitted).

15   "An arbitration award draws its essence from the agreement if the award is derived from the

16   agreement, viewed in light of the agreement's language and context, as well as other indications of

17   the parties' intentions." <u>Lagstein</u>, 607 F.3d at 642 (citation and internal quotation marks omitted).

18   "[T]he question is whether the award is 'irrational' with respect to the contract, not whether the

19   panel's findings of fact are correct." <u>Id.</u> (citation omitted).  Further, "[courts] do not decide the

20   rightness or wrongness of the arbitrators' contract interpretation, only whether the [arbitrator]'s

21   decision 'draws its essence' from the contract." <u>Bosack</u>, 586 F.3d at 1106 (citation omitted).

**III.    DISCUSSION**

23       Royal Alliance moves this Court to vacate the entire arbitration award to Respondent

24   Lewis, and to vacate the award of attorneys' fees.  Respondents oppose Royal Alliance's motion,

25   cross-petition to confirm the FINRA arbitration Award, and also seek attorneys' fees for defending

26   against Royal Alliance's petition to vacate.  The Court discusses each of these issues in turn.

**A.    Consolidation of the <u>Lewis</u> Arbitration with the <u>Mora/Gonzalez</u> Arbitration**

28       Royal Alliance argues that the order granting consolidation of the two arbitrations into a

United States District Court
Northern District of California

single matter before the <u>Mora/Gonzalez</u> panel "exceeded the scope of the arbitrators' powers under FINRA Rules" because "FINRA's procedural rule provides that only an arbitration panel in a 'lower-numbered' case has the power to decide a motion to consolidate unless the parties agree otherwise."[1] ECF No. 19 at 16.  It further argues that, by allowing the case to nevertheless proceed before the higher-numbered <u>Mora/Gonzalez</u> panel, the arbitration panel "allowed the Respondent and their counsel to engage in a blatant act of 'arbitrator shopping,' in violation of FINRA's Rules and established procedures."  <u>Id.</u>

FINRA Code Rule 12312 titled "Multiple Claimants" provides:

(a) One or more parties may join multiple claims together in the same arbitration if the claims contain common questions of law or fact and:

- The claims assert any right to relief jointly and severally; or
- The claims arise out of the same transaction or occurrence, or series of transactions or occurrences.

(b) After all responsive pleadings have been served, claims joined under paragraph (a) of this rule may be separated into two or more arbitrations by the Director before a panel is appointed, or by the panel after the panel is appointed.  A party whose claims were separated by the Director may make a motion to the panel in the lowest numbered case to reconsider the Director's decision.

<u>See</u> ECF No. 26-2 at 19.

Royal Alliance does not rely on the text of the rule itself; nor could it, as the rule says nothing about consolidation occurring before the lower-numbered panel (with the exception of subsection (b), which is not relevant here).  Instead, Royal Alliance relies on Volume 4 of "The Neutral Corner" a FINRA-issued document that it describes as a "refresher" on FINRA Rule 12312.  ECF No. 19 at 17.

The document, which has been filed with the Court as an exhibit to Royal Alliance's motion, was issued in December 2014, approximately two months after the <u>Mora/Gonzalez</u> panel granted Respondents' motion to join on October 21, 2014.  ECF No. 19-18.  It is eighteen pages long and covers various topics including 'Awarding Attorneys' Fees in Florida Arbitrations,"

---

[1] Royal Alliance argues, and Respondents do not dispute, that their arbitration agreements required the arbitration to be conducted in accordance with FINRA rules, and that under federal law, arbitration panels must conduct their proceedings in accordance with the applicable agreement. <u>See</u> ECF No. 19 at 18.

United States District Court
Northern District of California

"Dispute Resolution and FINRA News," and "A Closer Look at Motions to Consolidate or Sever Claims." Id. at 1. On the subject of motions to consolidate or sever, the document discusses the role of FINRA and arbitrators in relation to such motions, the relevant FINRA Code Rules, and factors to consider when resolving these motions. Id. at 12-14. Royal Alliance relies on a sentence at the top of page 14, which states: "If a party files a motion to consolidate or sever, the panel in the lower-numbered case will decide the motion, unless the parties agree otherwise." Id. at 13.

Royal Alliance's position borders on the frivolous. First, it is highly doubtful that the "law" the panel supposedly disregarded is even law at all. Rule 12312 says nothing about requiring consolidation to occur before a lower-numbered panel rather than a higher-numbered one. Though Royal Alliance relies on the language quoted above from The Neutral Corner, there is no indication that this refresher should be considered as a binding rule on FINRA arbitrations. On the contrary, Respondents suggest that The Neutral Corner is written by FINRA staff members merely as guidance for arbitrators, and cannot be considered part of the FINRA Code Rules because it was not approved by the SEC. ECF No. 25 at 27 n.9. Royal Alliance does not dispute these contentions — indeed, its own motion describes The Neutral Corner not as newly established law but as "an explanation of the proper construction of the existing rule's language." ECF No. 19 at 18. Further, even if The Neutral Corner could be considered binding, it was issued two months after the panel granted the motion to join, and the panel explicitly held that the document was not retroactive. Though Royal Alliance asserts that The Neutral Corner reflected FINRA's "long[-]standing policy" to consolidate cases before the lower-numbered panel, ECF No. 19 at 17, the document itself says nothing about the length of time the policy, if it is one, has been in effect. ECF No. 19 at 17.

Second, even assuming for the sake of argument that FINRA rules require consolidation to occur before the lower-numbered panel, Royal Alliance has failed to show that the panel "understood and correctly stated" that rule, "but proceeded to disregard the same." Though Royal Alliance contends that it argued to the panel that the motion to join should be heard before the lower-numbered panel, ECF No. 28 at 4, it provides no support for this contention, nor for the

1    further contention that the panel agreed with Royal Alliance and therefore "understood and

2    correctly stated" this rule before proceeding to disregard it.  See Bosack, 586 F.3d at 1104

3    ("[T]here must be some evidence in the record, other than the result, that the arbitrators were

4    aware of the law and intentionally disregarded it."  (citation and internal quotation marks

5    omitted)).

6         Finally, the Court notes that though Royal Alliance accuses Respondents of "blatant"

7    arbitrator shopping, it provides little support for this contention, asserting only that Respondents

8    "apparently viewed" the Lewis panel as unfavorable and "perceived" the Mora/Gonzalez panel "to

9    be more friendly."  ECF No. 19 at 17.  In fact, as Respondents explain in their brief, the panels for

10   the Lewis and Mora/Gonzalez panels were chosen through identical procedures, which involved

11   both parties ranking possible arbitrators by preference, and FINRA then choosing the panel by

12   formula using the parties' rankings.  ECF No. 25 at 11.  Though members of the original

13   Mora/Gonzalez panel later withdrew, they were replaced by new arbitrators who were also chosen

14   through an established procedure that involves choosing the next highest-ranked arbitrator and, if

15   none are available, a randomly chosen one.  Id.

16        In sum, Royal Alliance has failed to identify a rule of law that the Mora/Gonzalez panel

17   manifestly disregarded in consolidating the two arbitrations.  Accordingly, the Court denies the

18   motion to vacate the order to consolidate and the award in the Lewis case.

19        **B.    Award of Attorneys' Fees to Respondents**

20        Royal Alliance contends that the panel also erred in awarding attorneys' fees to

21   Respondents.  It acknowledges that the customer agreements at issue in the case "provided for

22   attorneys' fees . . . in connection with collection of monies owed or deficiencies in Respondents'

23   accounts," but argues that "there was no breach of the customer agreement, and no evidence was

24   offered at the arbitration hearing of any breach of the customer agreements."  ECF No. 19 at 20.

25   In their opposition, Respondents contend that "Royal Alliance breached its "know your customer"

26   provision and it failed to purchase securities for the Respondents which were consistent with their

27   customer objectives, risk tolerance, time horizon, and liquidity needs."  ECF No. 25 at 32.  Royal

28   Alliance rejoins that "the fatal flaw" with Respondents argument is that "the customer agreements

United States District Court
Northern District of California

7

1    do not contain a Know Your Customer Rule." ECF No. 28 at 5.

2        Royal Alliance's contention must be rejected for multiple reasons. First, as Respondents

3    note, the arbitration panel does not provide any reasoning for its ruling. See ECF No. 19-25 at 1-

4    11. "An arbitrators' award may be made without explanation of their reasons and without a

5    complete record of their proceedings," and if that is the case, "it is all but impossible to determine

6    whether they acted with manifest disregard of the law." Bosack v. Soward, 586 F.3d 1096, 1104

7    (9th Cir. 2009) (citation and internal quotation marks omitted). This case exemplifies that

8    principle. Though Royal Alliance contends that the arbitration panel's decision was flawed

9    because it incorrectly interpreted the customer agreements at issue, there is no evidence at all of

10    the panel's reasons, much less evidence to support Royal Alliance's characterization of them.

11        Second, even if this Court could fully consider the arbitration panel's reasoning in

12    awarding attorneys' fees, it is apparent that the panel's decision was not "completely irrational"

13    and did not manifestly disregard the law. Indeed, the panel's decision appears to be wholly

14    reasonable under California Civil Code § 1717 and the applicable provisions of Royal Alliance's

15    customer agreements.

16        California Civil Code § 1717 states:

17            In any action on a contract, where the contract specifically provides
18            that attorney's fees and costs, which are incurred to enforce that
            contract, shall be awarded either to one of the parties or to the
19            prevailing party, *then the party who is determined to be the party*
            *prevailing on the contract, whether he or she is the party specified*
20            *in the contract or not, shall be entitled to reasonable attorney's fees*
            *in addition to other costs. Where a contract provides for attorney's*
21            *fees, as set forth above, that provision shall be construed as*
            *applying to the entire contract,* unless each party was represented by
22            counsel in the negotiation and execution of the contract and the fact
            of that representation is specified in the contract. (emphasis added)

23        The California Supreme Court explains that "section 1717 was enacted to establish

24    mutuality of remedy where a contractual provision makes recovery of attorney's fees available for

25    only one party, and to prevent oppressive use of one-sided attorney's fees provisions." PLCM

26    Group, Inc. v. Drexler, (2000) 22 Cal. 4th 1084, 1090-91 (citing Hsu v. Abbara (1995) 9 Cal. 4th

27    863, 870).

28        Royal Alliance's Customer Agreements with Respondents contained the following

United States District Court
Northern District of California

1    language:  "[Respondents] shall pay the reasonable costs of collection of any monies owed or

2    deficiency in [Respondents'] accounts including, but not limited to attorney's fees and costs."

3    ECF No. 26-1–26-3 at 2.  It is undisputed that Respondents were not represented by counsel in the

4    negotiation and execution of the contracts.  ECF No. 31 at 4.  Under these circumstances, section

5    1717 mandates that Royal Alliance's attorneys' fees provision is reciprocal in nature and applies

6    to the entire contract.

7        Respondents state that in their briefing before the arbitration panel, they discussed "the

8    agreements' provisions regarding customer objectives, risk tolerance, time horizon, and liquidity

9    needs.  Respondents also noted that a 'know your customer rule' was stated within the customer

10   agreement."  ECF No. 25 at 31.  Respondents then argued that Royal Alliance "breached its know

11   your customer provision and it failed to purchase securities for the Respondents which were

12   consistent with their customer objectives, risk tolerance, time horizon and liquidity needs."  Id. at

13   32.

14       Royal Alliance argues that the arbitrators exceeded their power in agreeing with the

15   Respondents' contentions because the "Customer Agreements do not contain a Know Your

16   Customer Rule."  ECF No. 28 at 5.  Rather, it argues that "the provisions in Section VI and on

17   page 5 of the customer agreements consist primarily of definitions of terms used throughout the

18   customer agreements."  Id.  In other words, Royal Alliance's argument appears to be that the

19   "Know Your Customer" section on page 5 of the contract did not create an obligation that could

20   have been breached.

21       The section is captioned "Know Your Customer" in boldface.  The language of the section

22   reads in part as follows:

23       The FINRA Rule 2090 (Know Your Customer) requires [Royal Alliance] to use reasonable
         diligence and to know and retain the essential facts concerning each customer with regard
24       to the opening and maintenance of every account. . . . To comply with the regulation,
         [Royal Alliance] will ask for the name, address, date of birth, social security number, and
25       other information for control persons/authorized parties associated with the account.

26   ECF No. 26-3 at 5 (emphasis added).  In the face of this clear language, Royal Alliance's attempt

27   to characterize section VI merely as "definitions of terms used throughout the customer

28   agreements" is unsustainable.  ECF No. 28 at 5.  Moreover, to the extent that this section is

1   ambiguous, it should be construed against the drafter — Royal Alliance.  See Fed. Express Corp.

2   v. Holowecki, 552 U.S. 389, 406 (2008) (construing ambiguities against the drafter encourages

3   precise expression).

4         At best, therefore, Royal Alliance has demonstrated only a legitimate factual dispute over

5   the proper interpretation of a contractual clause in its customer agreements.  This is insufficient to

6   meet its burden of proving that the award issued by the Mora/Gonzalez panel is "completely

7   irrational."  See Bosack, 586 F.3d at 1104.  Accordingly, its motion to vacate the award of

8   attorneys' fees is denied.

9         **C.      Respondent's Request for Post-Arbitration Attorneys' Fees**

10        Respondents moved this Court for an award of post-arbitration attorneys' fees, arguing that

11  "[b]ecause the [Respondents] were already determined to be the prevailing party, and Royal

12  Alliance was determined to have breached the contract, [Respondents] are entitled to recover their

13  post-arbitration attorneys' fees on this separate and distinct ground."  ECF No. 31 at 4.

14        As discussed above, Cal. Civil Code § 1717 mandates that the attorneys' fees provision in

15  the Customer Agreements is reciprocal in nature and applies to the entire contract.  In support of

16  their motion, Respondents rely on Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum

17  Corp., 791 F.2d 1334 (9th Cir. 1986).  There, in affirming the district court's award for post-

18  arbitration attorneys' fees, the Ninth Circuit held that an appellant's motion to vacate an

19  arbitration award is an action "based on the contract and therefore the contractual provision for

20  attorney fees applies."  Id. at 1340.

21        In its opposition to Respondents' motion for post-arbitration attorneys' fees, Royal

22  Alliance once again contends that its "customer agreements do not contain a Know Your

23  Customer Rule."  ECF No. 34 at 3.  As the Court has previously stated, this argument is

24  unpersuasive.

25        Royal Alliance's motion to vacate the arbitration award is based on its customer

26  agreements and therefore the same contractual provisions for attorneys' fees apply here.  See

27  Cypress Equip. Fund v. Royal Equip. Inc., No. C-96-3783 MMC, 1997 WL 106137 at *14-15

28  (N.D. Cal. Jan. 13, 1997) (awarding post-arbitration attorneys' fees for defending against petition

United States District Court
Northern District of California

10

1   to vacate pursuant to parties' contract).  Accordingly, Respondents' motion for post-arbitration

2   attorneys' fees is granted.

3                                    **CONCLUSION**

4           Royal Alliance's motion to vacate the arbitration award is denied.  Respondents' cross-

5   motion to confirm the arbitration award and their motion for post-arbitration attorneys' fees are

6   both granted.  Respondents shall file a motion for their attorneys' fees within 14 days after the

7   issuance of this order, pursuant to Fed. R. Civ. P. 54(d)(2).

8           **IT IS SO ORDERED.**

9   Dated:  March 10, 2016

10

11   _____

12                           JON S. TIGAR
                        United States District Judge

United States District Court
Northern District of California

11